IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–02839–KMT

DESIRE HODGE, individually, and on behalf of all others similarly situated,

    Plaintiff,

v.

SIGNIA MARKETING, LTD, and
JEFFREY FELL,

    Defendants.

---

## ORDER

---

This matter is before the court on "Plaintiff's Motion for Conditional Certification and to Facilitate Collective Action Notice Under 29 U.S.C. §216(b)" ("Mot.") [Doc. No. 28] and on "Unopposed Motion to Modify Plaintiff's Motion for Conditional Certification and to Facilitate Collective Action Notice Under 29 U.S.C. §216(b)" [Doc. No. 31]. The latter unopposed motion shall be granted insofar as it merely seeks to amend, without objection of Defendants, the definition of the collective. "Defendants' Response to Plaintiff's Motion for Conditional Certification and to Facilitate Collective Action Notice Under 29 U.S.C. § 216(B)" ("Resp.") [Doc. No. 29] was filed May 6, 2016, and "Plaintiff's Reply in Support of Motion for Conditional Certification and to Facilitate Collective Action Notice Under 29 U.S.C. §216(b)" ("Reply") [Doc. No. 30] was filed on May 20, 2016.

Plaintiff alleges that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), Colorado Wage Act, Colo. Rev. Stat. § 8-4-101, *et seq.* ("CWA"), and Colorado Minimum Wage Order 32 ("CMWO") by paying certain defined hourly workers for hours worked as overtime at their straight wage rate rather than at a rate of no less than time and a half of their regular rate of pay for hours worked in excess of forty per week.  Plaintiff describes the collective as, "all former and current hourly workers of Defendants from December 31, 2012 to the present who were paid at a straight time rate for overtime."  [Doc. No. 31 at 2.]

## I. JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216(b) (Fair Labor Standards Act), and 28 U.S.C. § 1367 (supplemental).

## II. STANDARD OF REVIEW

Plaintiffs seeks to pursue a collective action under the FLSA on behalf of herself and other similarly situated current and former employees of the defendants, Signia Marketing, Ltd. and Jeffrey Fell.  Section 216(b) of the FLSA provides the exclusive means of bringing such class-wide claims to redress alleged violations of the FLSA.  *See* 29 U.S.C.A. § 216(b); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678–79 (D. Kan. 2004). Contrary to the procedures governing a typical class action under Rule 23, plaintiffs who wish to participate in a FLSA collective action must opt in to the action.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *In re American Family Mutual Insurance Co. Overtime Pay Litigation*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009).

A collective action under the FLSA may be maintained only by and among employees who are "similarly situated." The Tenth Circuit has adopted a two-step analysis governing this determination. At the initial "notice stage," the trial court must determine whether the plaintiffs have made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (citation and internal quotation marks omitted). Certification at this step is conditional, and the standard of proof "is a lenient one that typically results in class certification," allowing notice to be sent to the putative class members and discovery to be undertaken. *Brown* at 679.

After discovery is complete, the second, or "decertification," stage occurs. At that point, the court applies a much stricter standard to determine whether class members are similarly situated and, consequently, whether the case should continue as a collective action. In making that determination, the court must evaluate, *inter alia*, "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit." *Id.* (citing *Thiessen*, 267 F.3d at 1103).

### III. ANALYSIS

#### A. Provisional Certification of Collective Action

In her Amended Complaint ("Am. Compl.") [Doc. No. 26], Plaintiff alleges that "Plaintiff and all other similarly situated employees were forced by Defendants and regularly worked overtime without proper pay." (*Id.* ¶ 38.) Plaintiff states, "Throughout Plaintiff's employment with Defendants, Plaintiff was paid at straight time rate for overtime hours recorded

during many workweeks" (*id*. ¶ 42.) and "[t]he other Supervisors and Customer Service Representatives were paid in a similar manner" (*id*. ¶ 43).

In her Declaration attached to the Reply [Doc. No. 30-2], Plaintiff states she was "employed by Defendants as an hourly paid employee from approximately April 2014 to December 2014 and from July 2015 to December 2015" (*id*. ¶ 2.)  Further, she states, "[t]hrough my employment time period with the Defendants, I worked in three (3) different positions – Customer Service Representative ("CSR"), Floor Lead and Floor Supervisor."  (*Id*. ¶ 3.)  Plaintiff states that she supervised up to 35 CSRs and 2 Floor leads during her tenure of employment.  (*Id*. ¶¶ 16-17.)  Plaintiff states that regardless of which job she was performing, "Defendants paid me at straight time rate for hours recorded over forty (40) in a workweek, without a premium."  (*Id*. ¶ 20.)  Further, Plaintiff alleges, "Defendants' policy and practice of straight time rate for overtime pay was applicable the other CSRs, Floor Leads and Floor Supervisors" (*id*. ¶ 21) and that "[t]he payroll records will show on their face exactly what I'm complaining about on behalf of myself and all the others who were shorted pay" (*id*. ¶ 22). Although Plaintiff does not state the basis of her knowledge, she alleges that "[t]here are hundreds of hourly employees, such as CSRs, Floor Leads and Floor Supervisors, who were/are subjected to Defendants' wage policy and practice described above."  (*Id*. ¶ 24.)  In her Amended Complaint, the Plaintiff concludes that "[a]t all relevant times, Plaintiff and all other similarly situated employees worked in the manner described above and Defendants encouraged, instructed, and required them to work in such manner."  (Am. Compl. ¶ 54.)

Further, Plaintiff alleges that Defendants automatically deducted lunch breaks from Supervisors' pay even though they worked through many of those unpaid lunch breaks and that

Defendants failed to compensate Plaintiff and all other Supervisors wages for working off the clock and overtime compensation at time and a half (1.5) their regular rate of pay. (*Id*. ¶¶ 87-88.)

Recognizing the low threshold established to certify a collective FLSA action in order to quicken the process of getting notice out to the collective, Defendants nevertheless argue that Plaintiff has failed to show any facts supporting her "mere accusations and conclusory statements that the alleged putative class members were victims of a single decision, policy or plan." (Resp. at 4.) Indeed, review of both the motion and the Amended Complaint reveal that Plaintiff sets forth specific instances where <u>she</u> did not receive time and one-half pay for overtime, but she does not set forth even one instance where anyone else was subjected to the same policy or even complained they were subjected to such a policy. Even though Plaintiff alleges to be a former supervisor in the Company, she fails to set forth specific facts as to the Company policy to which all of the approximately 6,100 potential collective members were subject. Plaintiff does not claim she knew the compensation structures of her fellow employees or even of her own supervisees. She does not claim that she had ever seen the pay stubs of any other employee, including her supervisees.

First, Plaintiff responds to Defendants' criticisms by stating that the paycheck stubs she has attached to the Complaint, show that accrued overtime was paid at the straight time rate. The problem with that argument is that all the paycheck stubs relate to payments to Plaintiff, not to persons who might be similarly situated with her. Through the complaint, attachments and her Declaration, Plaintiff has no trouble with a showing that she was a victim of a policy to pay overtime hours in straight time. Her problem is showing that this happened to anyone else.

Second, Plaintiff states that she was "in a position to know and based on her personal knowledge and observation" (Mot. at 9.)  She makes the assertion that the hourly employees at Signia are the victims of Defendants' commonly applied policy and practice of paying overtime hours at the regular rate without a premium, but she never makes the next step to say that she saw or observed any other employee's pay stubs or that any employee told her they were being paid for overtime at the regular rate or that she actually has the knowledge that the other employees were, indeed, paid no premium for overtime hours.  Being in a position where one *could* know something is not at all the same as actually knowing it or even knowing facts which might tend to prove it.

Third, Plaintiff references the allegations of Signia former employee Mone' Noah in *Noah v. Signia Marketing, LTD et al*, case number 15-cv-00353-LTB-MEH.  In that case, Plaintiff Mone' Noah worked for Signia and Mr. Fell as a CSR from on or about May 2014 through December 2014 at Defendants' office located at 3888 E. Florida Ave., Ste. 101, Denver, Colorado 80210. (Noah Compl, Reply, Ex. A at ¶ 9.)  Ms. Noah made allegations very similar to those at issue in this case, to wit: that Defendants were failing to pay premium pay for overtime work to its customer service representatives.  (*Id.* at ¶ 24.)  Obviously, since Ms. Noah brought her own lawsuit about this behavior which ultimately settled prior to any collective certification, Ms. Noah is an unlikely putative class member in this case.  Nevertheless, Ms. Noah claimed in her Complaint that "she performed work in excess of forty hours per workweek without receiving overtime pay for pay periods ending: 8/16/2014; 08/30/2014; 09/13/2014; 09/27/2014; 10/11/2014; 10/25/2014; and 12/20/2014." (*Id.* ¶ 16.)  This court finds that this extra information, coupled with the Plaintiff's showing of her own payroll documents, her Amended

Complaint and her Declaration, establishes *a reasonable basis* to conclude that the hourly employees at Signia are the victims of Defendants' commonly applied policy and practice of paying for overtime hours worked at the straight rate of pay.

As noted, for conditional certification at the notice stage, courts " 'require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.' " *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).  This court finds that the plaintiff has set forth sufficient allegations to provide a reasonable basis to believe that current and/or former employees of the defendants are similarly situated, as that term is used in § 216, and subject to a uniform policy or practice with regard to the payment of overtime wages.

### B.     Provisions of the Notice

The plaintiff's proposed notice [Doc. No. 28-1] to potential plaintiffs in a collective action contains a reasonably narrow description of the group of similarly situated employees for which the plaintiff seeks to pursue a collective action, to wit: "all former and current hourly workers of Defendants from December 31, 2012 to the present who were paid at a straight time rate for overtime."  Obviously, the originally submitted Notice [Doc. No. 28-1] will be amended at section two, to reflect the amended definition of the putative class.

Defendants agree to the content of the proposed Notice with four caveats.  First, Defendants object to the production of email addresses for the proposed 6,100 class members. That objection is overruled.  Email notice is an efficient and cost-effective way to ensure the putative collective members receive the notice.  To the extent the Defendants know or have access to information about putative class members' email addresses, those shall be provided.

Given the expected size of the putative class (Plaintiff is alleging 6,100), the court will grant the Defendants' unopposed request to produce the names, dates of employment, and last known mailing addresses and email addresses of the collective member(s) within 21 days of the Order, rather than 14 days.

Further, the court finds that notice should be given to potential collective members employed during the three year period prior to the date of this Order since Plaintiff has alleged the Defendants' conduct was "willful, arbitrary, unreasonable and/or in bad faith."  (Am. Compl. ¶ 56.)

Finally, the court agrees with Defendants that the mailing to putative class members of the Notice and consent forms should be without any cover letter or missive from Plaintiff's counsel.[1]

Therefore, it is **ORDERED**

**"**Plaintiff's Motion for Conditional Certification and to Facilitate Collective Action Notice under 29 U.S.C. § 216(b) [Doc. No. 28] is **GRANTED**.  This case is conditionally certified to proceed as a "collective action" under 29 U.S.C. § 216(b) and the class is defined as: all former and current hourly workers of Defendants from December 31, 2012 to the present who were paid at a straight time rate for overtime.

---

[1] Plaintiff's Counsel asserts he has never had any intention of including such a document.

It is further **ORDERED**

The "Unopposed Motion to Modify Plaintiff's Motion for Conditional Certification and to Facilitate Collective Action Notice Under 29 U.S.C. §216(b)" [Doc. No. 31] is **GRANTED**.

It is further **ORDERED**

1. The Notice of Lawsuit, as it will be modified in accordance with this Order, is approved;

2. Defendants shall provide the names, dates of employment, e-mail addresses, and last known mailing addresses of all potential members of this collective action in a computer-readable and searchable data file to Plaintiff within twenty-one (21) days of this Order.

3. The Collective Action Notice and Opt-In Consent Form proposed by Plaintiff (Docket No. 28, Exhibit 1) shall be sent out to all Collective Members via both US First Class Mail and E-mail no later than **July 18, 2016** and all Collective Members have 60 days to join this lawsuit;

4. No later than **July 18, 2016**, Defendants shall post the Notice and Opt-In Consent Form in conspicuous places where all employees may see the documents at their places of business and that Notice shall remain posted throughout the opt-in period.

Dated this 13th day of June, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge